## SMITH et al. v. SOUTHERN DRY DOCK & SHIPBUILDING CO.

(Circuit Court of Appeals, Fifth Circuit. May 14, 1926.)

No. 4531.

Contracts ⚖═28(3)—Evidence held to show that, after plaintiff's letter offering to make certain repairs was accepted by tug owner's letter, reciting much less total sum than specified in offer, parties met and agreed to eliminate certain items.

Evidence *held* to show that, after plaintiff by letter offered to make certain repairs on tug, and owner replied by letter accepting offer and reciting items, but stating much lower price than stated in offer, parties agreed to eliminate certain items, after which plaintiff's representative had such items stricken out.

Appeal from the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Suit in admiralty by the Southern Dry Dock & Shipbuilding Company against W. G. Smith and another. Judgment for libelant, and respondents appeal. Affirmed.

Geo. H. Terriberry and Walter Carroll, both of New Orleans, La. (Terriberry, Rice & Young, of New Orleans, La., on the brief), for appellants.

James A. Leathers, of Gulfport, Miss., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This is an appeal in admiralty from a judgment awarding appellee $4,711.02 as a balance due for certain repairs to the tug Empire, owned by appellant Smith. Only questions of fact are presented.

It appears the parties entered into a contract for certain repairs to the vessel in June, 1922. The tug was put in the dry dock operated by appellee, and the repair work proceeded with. There is no dispute as to this contract. Thereafter another agreement was made to do additional work at definite prices, but with the understanding that, if it proved cheaper on a cost plus basis, Smith was to have the benefit of that method. Subsequently other extra work was done on a cost plus basis. A third contract was also made, but there is now no question raised as to this. The whole controversy revolves around the second contract and the extra work.

On February 27, 1924, some 20 months after the work was commenced, the District Court appointed a special master to take the evidence. He saw and heard the witnesses, and in due course reported, recommending the judgment later entered. With regard to the second contract, on June 30, 1922, appellee, through its superintendent, Laurendine, wrote a letter to Smith proposing to do 18 separate items of work on the tug, and naming a price for each item, the total being $2,139. Smith answered by letter saying: "This is to confirm understanding and acceptance of your proposal to do the following work, as below itemized, for the maximum sum of sixteen hundred and fifty dollars ($1,650.00)." In this letter the items were repeated, but without putting any prices to them.

On the trial before the master, Laurendine produced the original of Smith's letter and a carbon copy of his letter, with corresponding items stricken out in red ink in both, reducing the total amount to $1,637, which documents had been filed with the libel, and testified that the final agreement had been reached by Smith and himself at an interview, and the items then and there stricken out. Smith de-

nied this, and testified that the first time he had seen the altered documents was when they were produced in court. Some of the items stricken out, perhaps all of them, were later charged for as extra work.

About all that is before us to decide is as to the truth concerning the alteration of these letters. Each side seems to think a decision must necessarily be a reflection on one or the other of the witnesses, but we do not view it so harshly. At first blush it would seem unusual for two men engaged in making a contract to strike out certain items as was done. On the other hand, the letters did not constitute a contract, without the erasures, for the proposal was not accepted as made, and it is hardly logical to say that appellee would have scaled down its proposal over 18½ per cent. without eliminating some of the items, especially as appellant was to have the benefit of any reduction shown by calculating the work on a cost plus basis.

The conclusion we reach is that both parties to this transaction were somewhat mistaken as to what actually occurred. Neither is impeached as to veracity, and each no doubt thought he was right. What probably occurred is that the witnesses met after the exchange of letters and agreed on the elimination of certain items, after which, and not in Smith's presence, Laurendine had the documents ruled up for the purpose of retaining a memorandum. Naturally, with the lapse of time before trial, both witnesses could have been, and probably were, mistaken in their testimony, instead of untruthful. The master must have come to some such conclusion, for he makes no mention of the testimony in his report, and allowed only $1,560 on this contract, instead of $1,637.

We find no error in the record.

Affirmed.